**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| PARKERVISION, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. No. 6:22-cv-01162-ADA |
| v. | § | |
| | § | C.A. No. 6:23-cv-000374-ADA |
| REALTEK SEMICONDUCTOR CORP., | § | |
| | § | **PUBLIC REDACTED VERSION** |
| Defendants. | § | |

**DEFENDANT REALTEK SEMICONDUCTOR CORP.'S
<u>TRADITIONAL AND NO EVIDENCE MOTIONS FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ...............................................................................................................1

II.  SUMMARY JUDGMENT STANDARD.....................................................................4

III. NO DIRECT INFRINGEMENT OF THE ASSERTED METHOD CLAIMS ...................4

    1.   To Prove Direct Infringement, ParkerVision Must Present Evidence of Specific Instances that Realtek Practiced the Claims in the United States  ............................4

    2.   ParkerVision's Infringement Contentions on the Asserted Method Claims are Premised on Incorrect Law ...................................................................................5

    3.   ParkerVision's Vague References to Realtek's Attendance at CES Does Not and Cannot Constitute Direct Infringement as a Matter of Law.......................................7

    4.   ParkerVision Cannot Establish Direct Infringement of the Asserted Method Claim Through the Acts of Others....................................................................................8

IV.  NO DAMAGES BASED ON FOREIGN SALES .................................................................10

    1.   To Capture Foreign Sales, ParkerVision Must Identify Realtek Domestic Infringement That Enabled Or Caused Foreign Damages .......................................10

    2.   ParkerVision's Radical Theory Is Based On A Flipped Understanding of the Law 11

    3.   ParkerVision Does Not and Cannot Identify Domestic Infringement by Realtek That Proximately Caused Foreign Sales ...........................................................................15

        a.   ParkerVision's foreign sales calculations have no ties to Realtek domestic activities. ...............................................................................................................15

        b.   The record is void of Realtek domestic activity. ...........................................17

    4.   ParkerVision's Lack of Evidence Mirrors That In *Brumfield*.................................19

V.   NO DAMAGES FOR THE ASSERTED SYSTEMS CLAIMS FOR FAILURE TO MARK ...................................................................................................................................21

    1.   ParkerVision Is Required To Take Reasonable Efforts To Mark By Sellers and Importers Of The Patented Article "Under The Patentee" ......................................21

    2.   The Burden Has Shifted To ParkerVision To Show That It Took Reasonable Efforts To Ensure Compliance With Marking ...................................................................23

    3.   ParkerVision Incorrectly Asserts That Products Governed By Covenants Not To Sue Are Exempt From Marking.....................................................................................26

    4.   It Is Undisputed There Was No Reasonable Efforts To Ensure Samsung Marked Because ParkerVision Assumed No Such Obligation Existed ................................27

VI.  CONCLUSION ..................................................................................................................28

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                                    **Page(s)**

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
  797 F.3d 1020 (Fed. Cir. 2015) (*en banc*) ............................................................9

*Amsted Ind., Inc. v. Buckeye Steel Castings Co.,*
  24 F.3d 178 (Fed. Cir. 1994)................................................................................21

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986).................................................................................................4

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.,*
  876 F.3d 1350 (Fed. Cir. 2017).................................................................22, 23, 24

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.,*
  853 F.2d 1557 (Fed. Cir. 1988)...............................................................................4

*Brumfield v. IBG LLC,*
  97 F.4th 854 (Fed. Cir. 2024), *cert. denied sub nom. Brumfield v. IBG
  LLC*, 145 S. Ct. 1922 (2025), *reh'g denied*, 145 S. Ct. 2807 (2025).........................*passim*

*Certain RF Capable Integrated Circuits and Products Containing the Same,*
  Inv. No. 337-TA-982 ............................................................................................23

*Devices for Med. v. Boehl,*
  822 F.2d 1062 (Fed. Cir. 1987).............................................................................22

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
  363 F.3d 1263 (Fed. Cir 2004)................................................................................5

*Enplas Display Device Corp. v. Seoul Semiconductor Co.,*
  909 F.3d 398 (Fed. Cir. 2018)...............................................................................10

*Ericsson, Inc. v. D-Link Sys. Inc.,*
  773 F.3d 1201 (Fed. Cir. 2014)...........................................................................4, 5

*Fujitsu Ltd. v. Netgear Inc.,*
  620 F.3d 1321 (Fed. Cir. 2010)...............................................................................2

*Johns Hopkins University v. CellPro, Inc.*
  152 F.3d 1342, 1366 (Fed. Cir. 1998)) ..................................................................10

*K&K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.,*
  52 Fed. Appx. 135 (Fed. Cir. 2002)......................................................................22

*Mass. Inst. Tech. v. Abacus Software, Inc.,*
  No. 5:01-cv-344, 2004 WL 5268123 (E.D. Tex. Aug. 4, 2004)......................................22

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986)................................................................................................4

*Med. Sols., Inc. v. C Change Surgical LLC*,
  541 F.3d 1136 (Fed. Cir. 2008).................................................................................5, 7, 8

*Mirror Worlds, LLC v. Apple Inc.*,
  784 F. Supp. 2d 703 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir.
  2012) ..............................................................................................................................4, 5

*NTP, Inc. v. Rsch. In Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005)........................................................................................10

*Ormco Corp. v. Align Tech., Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006)..........................................................................................4

*ParkerVision v. Apple Inc.*,
  Case No. 3:15-cv-01477-BJD-JRK (M.D. Fla.) .................................................................23

*ParkerVision v. Qualcomm Inc.*,
  Case No. 6:14-cv-00687-PGB-KRS .................................................................................23

*VDPP, LLC v. Volkswagen Grp. of Am., Inc.*,
  2024 WL 1313899 (S.D. Tex. Mar. 27, 2024)............................................................3, 22

*In re Yarn Processing*,
  602 F. Supp. 158, 169 (W.D.N.C. 1984) .........................................................................21

*Zoltek Corp. v. United States*,
  672 F.3d 1309, 1323 (Fed. Cir. 2012) (*en banc*) ...........................................................10

**Statutes**

35 U.S.C. § 287................................................................................................3, 21, 22, 23

Plaintiff ParkerVision, Inc. ("ParkerVision") alleges that Defendant Realtek Semiconductor Corp. ("Realtek") directly infringes claims 14, 17, 19, 23, 35, and 53 of U.S. Patent No. 6,049,706 (the "'706 Patent"), claims 2, 3, 8, 13 and 27 of U.S. Patent No. 6,266,518 (the "'518 Patent"), claims 20 and 21 of U.S. Patent No. 6,879,817 (the "'817 Patent"), and claims 1, 8 and 9 of U.S. Patent No. 9,118,528 (the "'528 Patent"). There is no indirect infringement pled in this case nor agency or joint enterprise, and thus, the focus is whether Realtek has itself engaged in any allegedly infringing activities in the United States. Pursuant to Federal Rule of Civil Procedure 56, Realtek respectfully moves for summary judgment on three issues: (i) no direct infringement of the asserted method claims of the '706 and '518 Patents, (ii) no damages based on foreign sales, and (iii) no damages for the long-expired '817 and '528 Patents for failure to mark. Each is a clear-cut issue.

## I.    INTRODUCTION

ParkerVision's infringement and damages theories are premised on alarming misunderstandings of fundamental law. These misunderstandings are fatal to ParkerVision's case, as confirmed when applying the correct law to the undisputed facts in the record.

*First*, as a matter of law, Realtek is entitled to summary judgment of no direct infringement of each of the asserted method claims—namely, all the asserted claims of the '706 and '518 Patents. For each asserted claim of these patents, ParkerVision and its experts allege that Realtek directly infringes because: ███████████████ ████████████████████████████████████ Ex. A (Ricketts Opening Rpt., Master Ex. 1) at 1; Ex. F (Ricketts Opening Rpt., Master Ex. 2) at 1; *see also* Ex. B (Bradford Rpt.), ¶¶ 26, 28; Ex. C (Benoit -1162 Rpt.) ¶¶ 75, 77; Ex. D (Benoit -374 Rpt.), ¶¶ 75, 77. But selling a product capable of infringing does not constitute direct infringement for method claims under well-established law.

It is axiomatic that "a method claim is *directly* infringed only by one practicing the

1

patented method [in the United States]." *Brumfield v. IBG LLC*, 97 F.4th 854, 879 (Fed. Cir. 2024), *cert. denied sub nom. Brumfield v. IBG LLC*, 145 S. Ct. 1922 (2025), *reh'g denied*, 145 S. Ct. 2807 (2025) (emphasis original) (citation omitted). Indeed, "it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of *specific instances* of direct infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) (emphasis added). Here, there is no record evidence establishing even a single instance where Realtek itself practiced any of the claimed methods in the United States in the relevant period (from November 2016 to November 2018). This is no surprise as Realtek is a Taiwan-based semiconductor design firm, which designs, manufactures, and tests its chips outside the United States. Thus, ParkerVision does not and cannot establish direct infringement by Realtek of the asserted method claims.

**Second,** as a matter of law, Realtek is entitled to summary judgment of no damages based on foreign sales. More than 80% of ParkerVision's approximately $20 million reasonably royalty calculation is based on foreign sales (sales outside of the United States). ParkerVision and its experts allege that ParkerVision can capture these foreign sales because

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████ Ex. B (Bradford Rpt.), ¶ 31; Ex. C (Benoit -1162 Rpt.), ¶ 80; Ex. D (Benoit -374 Rpt.), ¶ 80. But the Supreme Court in *WesternGeco* set forth no such principle. To the contrary, the Supreme Court held the exact opposite.

Specifically, as the Federal Circuit reiterated recently in *Brumfield*, infringement "focuses on domestic conduct." 97 F.4th at 873 (citation omitted). Accordingly, "*WesternGeco* [] hold[s] that a patent owner claiming infringement . . . may recover . . . foreign profits *proximately caused by domestic infringement*" (*id.* at 866, emphasis added), not the other way around. Here, ParkerVision fails to point to any alleged domestic acts of

2

infringement, let alone such acts that would have caused foreign sales of the Accused Chips. Thus, ParkerVision is not entitled to capture foreign sales in its damages.

**Third,** as a matter of law, Realtek is entitled to summary judgment of no damages for failure to mark as to the asserted apparatus claims—namely, all the asserted claims of the expired '817 and '528 Patents. Specifically, ParkerVision cannot establish that it took reasonable efforts to ensure that its licensee Samsung Electronics Co., Ltd. ("Samsung") marked its products, or establish that Samsung's Wi-Fi and Bluetooth products sold in the United States did not practice the '817 and '528 Patents.

Shortly before the damages period, in July 2016, ParkerVision and Samsung entered into a settlement agreement. Ex. O (ParkerVision-Samsung Agreement). The agreement includes no provisions requiring Samsung to mark. ParkerVision denies marking was necessary because Samsung represented that it was only using Wi-Fi chips supplied by Qualcomm, Inc. ("Qualcomm") for products sold in the United States, and under the ParkerVision-Samsung Agreement, products using Qualcomm chips are covered by a covenant not to sue, not a license. But once again, ParkerVision misunderstands the law. The law is clear that the marking requirement under 35 U.S.C. § 287 applies to any authorization to make or sell a patented product, regardless of whether that authorization takes the form of a license or a covenant not to sue. *VDPP, LLC v. Volkswagen Grp. of Am., Inc.*, 2024 WL 1313899, at *4 (S.D. Tex. Mar. 27, 2024) ("[C]ourts have previously found that § 287's marking requirement applies to a patentee's authorization of other persons to make and sell patented items in whatever form the authorization was given, regardless of whether the authorization are **settlement agreements**, **covenants not to sue** or licenses.") (emphasis added) (citation omitted). ParkerVision took no efforts to ensure that Samsung products using Qualcomm chips—chips that ParkerVision itself alleges infringed its patents—were marked. Thus, ParkerVision is not entitled to any damages on the asserted apparatus claims.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To create a genuine issue of fact, a non-movant cannot merely "present some evidence on an issue it asserts is disputed."  *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988).  "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth *specific facts* showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").  Thus, although resolution of justifiable factual inferences favors the non-movant, once the movant makes an initial showing of entitlement to judgment as a matter of law, summary judgment should be granted absent specific facts demonstrating existence of an issue for trial.  *Anderson*, 477 U.S. at 256; *Matsushita*, 475 U.S. at 586.

## III.     NO DIRECT INFRINGEMENT OF THE ASSERTED METHOD CLAIMS

### 1.     To Prove Direct Infringement, ParkerVision Must Present Evidence of Specific Instances that Realtek Practiced the Claims in the United States

ParkerVision has not and cannot produce a shred of evidence that Realtek itself practiced the asserted method claims in the United States.  "A method claim is directly infringed when someone practices every step of the patented method."  *Ericsson, Inc. v. D-Link Sys. Inc.*, 773 F.3d 1201, 1219 (Fed. Cir. 2014).  Importantly, "[m]ethod claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is a capable of infringing use."  *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006).  This requirement cannot be skirted by alleging that the accused infringer marketed the steps of the claimed method.  *Mirror Worlds, LLC v. Apple Inc.*, 784 F. Supp. 2d 703, 712

4

(E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012). "However marketed, [sales of the accused product] do not constitute direct infringement of the method claims without the requisite evidence showing [the accused infringer] actually performed the claimed steps [in the U.S.]." *Id.* at 713.

Although direct infringement can be proved by circumstantial evidence, "direct infringement of a method claim cannot be determined on speculation, assumptions, or inferences." *Id.* at 715; *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274-77 (Fed. Cir 2004) (affirming summary judgment of no direct infringement when patentee offered examples of "hypothetical direct infringement" rather than "identified instances of direct infringement"). For instance, "it is insufficient to merely assume that [the accused infringer] conducted tests that performed the method while the accused features were under development." *Mirror Worlds,* 784 F. Supp. 2d at 713. Further, "the mere demonstration or display of an accused product, even in an obviously commercial atmosphere is not an act of infringement for purposes of § 271(a)." *Med. Sols., Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1140 (Fed. Cir. 2008) (citation omitted).

Here, ParkerVision has not and cannot point to any evidence that Realtek practices the asserted method claims in the United States. That alone entitles Realtek to summary judgment on all asserted method claims as a matter of law. *Ericcson*, 773 F.3d at 1219. Instead, as set forth below, ParkerVision misstates and thus misapplies the law.

## 2.    ParkerVision's Infringement Contentions on the Asserted Method Claims are Premised on Incorrect Law

ParkerVision and its experts get the law wrong, focusing on the capability of the accused chips rather than whether Realtek ever practiced the asserted method claims in the United States. Critically, ParkerVision's expert reports are littered with misstatements of law that infect ParkerVision's entire case.

In the "Legal Standard" section of his expert report, ParkerVision's infringement expert

Dr. David Ricketts sets forth the incorrect legal framework he used to determine "Direct Infringement":



Ex. E (Ricketts Opening Rpt.), ¶ 31 (emphasis added).  ParkerVision and Dr. Ricketts further doubled down reliance on the on capability of the accused products, as opposed to any alleged practice by Realtek, stating in Dr. Ricketts' description of "Literal Infringement":



*Id.* ¶ 33 (emphasis as added).

In their claim charts, ParkerVision and Dr. Ricketts plainly allege that Realtek directly infringes by selling, offering to sell, and importing chips purportedly configured to perform the claimed method—directly contrary to well-established law:



Ex. A (Ricketts Opening Rpt., Master Ex. 1) at 1; Ex. F (Ricketts Opening Rpt., Master Ex. 2) at 1.

These errors are compounded by ParkerVision's industry expert Dr. William Bradford, who provides opinions based on the incorrect premise that Realtek can directly infringe the asserted method claims by advertising, making available, and marketing the accused products in the United States:



Ex. B (Bradford Rpt.), ¶¶ 26, 28.  These same misstatements are repeated by ParkerVision's damages expert Dr. Paul Benoit.  *See* Ex. C (Benoit -1162 Rpt.), ¶¶ 75, 77; Ex. D (Benoit -374 Rpt.), ¶¶ 75, 77.

Premised on a gross misunderstanding of the evidence necessary to establish direct infringement of method claims, ParkerVision does not and cannot prove its claim of direct infringement of the asserted method claims.

> ### 3.    ParkerVision's Vague References to Realtek's Attendance at CES Does Not and Cannot Constitute Direct Infringement as a Matter of Law

Although ParkerVision includes a boilerplate statement in its claim charts that ████

████████████████████████████████████████████████████

███████████████████████████████████ (Ex. A (Ricketts Opening Rpt., Master Ex. 1) at 1; Ex. F (Ricketts Opening Rpt., Master Ex. 2) at 1), there is no such evidence in the record.  Tellingly, Dr. Ricketts ████████████████

███████████████████████████████████ (Ex. E (Ricketts Opening Rpt.), ¶ 523), but does not expressly allege that Realtek directly infringed by practicing the asserted method claim at any trade shows.  *See also id.*, ¶¶ 673-74.  That is because Dr. Ricketts (and ParkerVision) cannot make such a statement.

As a matter of law, demonstrations by themselves at a trade show are legally insufficient to show "use" for direct infringement.  The Federal Circuit directly addressed this issue in *Medical Solutions v. C Change Surgical, LLC*, 541 F.3d 1136 (Fed. Cir. 2008).  There, the

plaintiff alleged that defendant had directly infringed the asserted patent by attending a trade show where the defendant "displayed a prototype of its product, staffed its booth with representatives, and made available brochures about the product." *Id.* at 1141. In finding the plaintiff failed to establish a prima facie case of direct infringement, the Court noted that "[s]everal courts addressing whether a defendant has 'used' a patented invention have held that the mere demonstration or display of an accused product, even in an obviously commercial atmosphere is not an act of infringement for purposes of § 271(a)." *Id.* at 1140.

The Court explained that "[t]he ordinary meaning of 'use' is 'to put into action or service.,'" and "none of these activities was putting the [accused] device into service." *Id.* at 1141. Specifically, even though the plaintiff claimed that the defendant "actively demonstrated" the accused product at the trade show, the plaintiff failed to "establish that the accused device was put into service so as to constitute an infringing use." *Id.* Here, ParkerVision and its expert fail to even show that Realtek demonstrated each and every accused chip at any trade show, let alone demonstrated in a way where the accused chip would perform a key aspect of the claimed inventions—a specific form of down-conversion of a radio frequency signal as required by the claim.

Indeed, as the *Medical Solutions* Court recognized, "courts have held that demonstrations of a device are not proper evidence of 'use' because using a device means using it to perform its actual function for service, not using it as a demonstrative display." *Id.* at 1141 n.4. Accordingly, even if Realtek had demonstrated each and every accused chip, such demonstration would still not constitute a "use."

### 4. ParkerVision Cannot Establish Direct Infringement of the Asserted Method Claim Through the Acts of Others

Both ParkerVision's industry expert and damages expert state: ███████████████

██████████████████████████████████████████████████

████████████████████ Ex. B (Bradford Rpt.), ¶ 28; Ex. C (Benoit -1162 Rpt.), ¶ 77; Ex.

D (Benoit -374 Rpt.), ¶ 77.  But ParkerVision does not and cannot proffer any evidence to legally attribute the actions of others to Realtek for the purposes of direct infringement.

"Where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*).  An entity can only be "responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id.*  An entity directs or controls others' performance "if it acts through an agent (applying traditional agency principles) or contracts with another to perform one or more steps of a claimed method." *Id.* at 1023.  A joint enterprise requires, among other things, "an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Id.*

Here, setting aside the fact that ParkerVision has not pled agency nor joint enterprise, ParkerVision fails to specifically identify any entity that performs any steps of the asserted method claims, let alone an entity that is "directed or controlled" or "forms a joint enterprise" with Realtek.  First, ParkerVision's expert is completely silent about any entity (even Realtek) performing any step of the asserted method claims.  *See generally* Ex. E (Ricketts Opening Rpt.).  Thus, there are no actions to attribute to Realtek.  Second, even if ParkerVision had evidence that an entity practiced the asserted method claims (which it does not), ParkerVision fails to proffer any evidence of direction and control (through agency or otherwise) or joint enterprise. ██████████████████████████████████████████████████████████████████████████████████████ ██████████████████ at Section ████████████████████████████████████████ ███████████████████████████████████████████

At bottom, ParkerVision does not and cannot proffer any evidence that Realtek—a

Taiwan-based semiconductor design firm, which designs, manufactures, and tests its products outside the United States—practiced any step of the asserted method claims in the United States.

## IV.    NO DAMAGES BASED ON FOREIGN SALES

### 1.    To Capture Foreign Sales, ParkerVision Must Identify Realtek Domestic Infringement That Enabled Or Caused Foreign Damages

"[A] reasonable royalty 'cannot include activities that do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'" *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 411 (Fed. Cir. 2018) (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015)). "Section 271(a) is only actionable against patent infringement that occurs within the United States." *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir. 2005), *abrogated on other grounds by, Zoltek Corp. v. United States*, 672 F.3d 1309, 1323 (Fed. Cir. 2012) (*en banc*). "[N]either export from the United States nor use in a foreign country of a product covered by a United States patent constitutes infringement." *Brumfield*, 97 F.4th at 881 (quoting *Johns Hopkins University v. CellPro, Inc.* 152 F.3d 1342, 1366 (Fed. Cir. 1998)).

That said, "foreign conduct can properly play a role in calculating patent damages" in limited situations. Specifically, a patentee must show how the domestic infringement enabled or otherwise caused the foreign conduct in such a way that increased the value of the domestic infringement:

> If the patentee seeks to increase that amount [of patent damages] by pointing to foreign conduct *that is not itself infringing*, the patentee must, at the least, show why the foreign conduct increases the value of the domestic infringement itself—because, e.g., the *domestic infringement enables* and is needed to enable otherwise-unavailable profits from conduct abroad—while respecting the apportionment limit that *excludes values beyond that of practicing the patent*.

*Brumfield*, 97 F.4th at 877 (emphasis added); *see also id.* ("[A] patent owner claiming infringement . . . may recover [] foreign profits proximately caused by domestic infringement.")

10

(citation omitted). Thus, any use of foreign conduct in the calculation of damages must "begin [with] a showing of causation based on *domestic 'infringement.'" Id.* at 879. ParkerVision cannot make this threshold showing.

### 2.     ParkerVision's Radical Theory Is Based On A Flipped Understanding of the Law

ParkerVision's damages calculation is backwards. Rather than start with a necessary showing of domestic infringement as a cause of foreign conduct of sales, ParkerVision relies entirely on foreign conduct divorced from domestic infringement. This is legally incorrect. Consequently, ParkerVision's damages demand based on foreign sales untethered to domestic infringement has no support in the law.

Specifically, ParkerVision does not and cannot identify any domestic infringing activities that enabled or caused the identified foreign sales because both ParkerVision's industry expert and damages expert incredibly premised their opinions on the exact reverse of the law—both state that their opinions are based on the incorrect understanding that

██████████████████████████████████████████████████████████

██████████████████████████ Ex. B (Bradford Rpt.), ¶ 31; Ex. C (Benoit -1162 Rpt.), ¶ 80; Ex. D (Benoit -374 Rpt.), ¶ 80. Indeed, ParkerVision's industry expert Dr. Bradford includes pages of law explaining that *WesternGeco* and *Brumfield* stand for this incorrect principle:

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████

Ex. B (Bradford Rpt.), ¶ 31; *see also* Ex. C (Benoit -1162 Rpt.), ¶ 80; Ex. D (Benoit -374), ¶ 80. Dr. Bradford further confirmed that his opinions were based on this incorrect principle at deposition:

██   ████████████████████████████████████████
████████████████████████████

██   ████████████████████████████████████████



Ex. H (Bradford Dep. Tr.), 49:16-50:4.

Notably, the entire purpose of Dr. Bradford's report was to opine that Realtek's foreign conduct proximately caused domestic activity, not the other way around. There is no identification, or even discussion, of domestic activity by Realtek. *See generally* Ex. B (Bradford Rpt.). Quite the opposite, Dr. Bradford focuses entirely on ███████████ ███████████████████ and how Realtek's foreign conduct as a fabless semiconductor design firm cause sales by others in the United States. *Id.,* ¶¶ 4, 43; *see also id.* ¶ 149 ███████████████

███████████████████████

███████████████████ ¶ 164 ████████

███████████████████████

███████████████████████

███████████████████████

███████████████



Ex. B (Bradford Rpt.), ¶ 43.

ParkerVision's damages expert Mr. Benoit relies on the same incorrect principle and Dr. Bradford's opinion that Realtek's foreign conduct caused sales in the United States as the predicate to include foreign sales in his damages calculation. But as a seasoned damages expert, Mr. Benoit knows that the principle as set forth in his report is wrong. Consequently, Mr. Benoit refused to explain his understanding of the principle, stating: ██████████████ ███████████████████████████████ Ex. I (Benoit Dep. Tr.), 84:2-4 (emphasis added). In fact, when asked to confirm whether *WesternGeco* required foreign conduct to cause domestic infringement or the other way around, he also refused to answer, stating: ████████████████████████████████████████ ████████████████████ *Id.*, 85:2-4. Tellingly, Mr. Benoit would not agree that the legal standard set forth by ParkerVision in paragraph 80 of his reports (and on which he predicated his damages calculation) is the correct legal standard:



*Id.*, 86:9-87:1.

Mr. Benoit refused to confirm his understanding, because he knows the standard as stated in his report is wrong. In fact, in other cases, he applied the correct standard, encompassing foreign sales only where they were caused by infringing activities in the United States:



Ex. I (Benoit Dep. Tr.), 82:14-19. Knowing that the standard is incorrect, Mr. Benoit expressly separates himself from Dr. Bradford's opinions. In particular, Mr. Benoit emphasizes that he provides no opinions as to whether or not foreign sales should be included in the damages calculation, and he only serves as a calculator:



*Id.*, 80:4-81:3.

At bottom, ParkerVision's sole predicate for including foreign sales in its damages calculation is that Realtek's foreign conduct caused sales and importation by others into the

United States. But the inclusion of damages based on foreign sales on this basis is legally deficient, and in direct violation of the presumption against extraterritoriality. *See Brumfield,*, 97 F.4th at 872 ("[The *WesternGeco*] framework . . . starts with a presumption that a statute lacks extraterritorial reach.").

### 3. ParkerVision Does Not and Cannot Identify Domestic Infringement by Realtek That Proximately Caused Foreign Sales

At trial, ParkerVision cannot cure this lethal error in the foundation of its damages theory. With the exception of a single Roku agreement that ParkerVision's damages calculation addresses separately (which Realtek is not challenging and is not at issue here), the record is completely void of any Realtek activity in the United States that is tied to foreign sales. More importantly, ParkerVision has already admitted that it is not domestic activity that causes the foreign conduct—instead, it incorrectly relies on the inverse. Thus, there is no genuine dispute for the jury to decide—ParkerVision has no Realtek domestic infringement to which it can point to capture foreign sales.

#### a. ParkerVision's foreign sales calculations have no ties to Realtek domestic activities.

ParkerVision's damages demand is ███████████ calculated by applying a per unit royalty rate to three "buckets": (1) Realtek U.S. sales, (2) ███ products incorporating the Accused Chips (regardless of how those chips were obtained[1]), and (3) ████████████ ██████████████████████ Ex. I (Benoit Dep. Tr.), 68:6-73:8; Ex. X (Benoit Aggregated Damages Schedule 1) at 1-2.

---

[1] ParkerVision does not have a proper basis to include in its royalty base all Roku products incorporating the Accused Chips, specifically, those not purchased from Realtek. But to narrow the issues for the Court to address on summary judgment, Realtek does not raise this issue at this stage. Realtek waives no rights as to this issue.

15



Ex. X (Benoit Aggregated Damages Schedule 1) at 2 (excerpted and annotated)

Notably, Realtek U.S. sales (the first bucket) accounts for a mere ███████████████ of ParkerVision's damages demand. Given this *de minimis* damages figure, ParkerVision seeks to append $████████ to its damages demand by claiming that it is entitled to a royalty on ████% of Realtek foreign sales (the third bucket). But this figure is void of any tie to any Realtek domestic activity. To the contrary, this is ParkerVision's estimate of how many Realtek chips are imported into the United States *by others*—in other words, ParkerVision's alleged "domestic infringement" caused by Realtek's foreign conduct. Under ParkerVision's radical theory, if a third party imported and sold Realtek's chips in the United States, that would constitute direct infringement and a "sale." That is not the law.

But again, neither ParkerVision's backwards understanding of the law nor any law generally justifies the inclusion of these foreign sales in ParkerVision's damages demand. As a threshold, ParkerVision is not entitled to recover damages against Realtek based on the domestic infringement *by others* because there is no indirect infringement claim pled in this case.[2]  *See* -1162 Dkt. 56 (ParkerVision's Reply to Realtek's Motion to Dismiss), at 11

---

[2] Nor could ParkerVision make an indirect infringement claim in good faith because Realtek did not have knowledge of the Asserted Patents until after their expiration. *See* Ex. S (Realtek Supplemental Responses to ParkerVision's First Set of Interrogatories dated May 23, 2025) at 4-6.

("ParkerVision does not allege indirect infringement."); -374 Dkt. 36 (ParkerVision's Reply to Realtek's Motion to Dismiss), at 14. ParkerVision cannot backdoor damages for a claim it does not and cannot assert.

Critically, by ParkerVision's own definition, these foreign sales are not caused by any Realtek domestic activity. Instead, ParkerVision admits that this number is the estimated imported sales caused by Realtek *foreign conduct*. As Mr. Benoit repeatedly explains, this figure represents ParkerVision's estimate as to the amount of ███████████

████████████████████████████████████████████

████"[3] Ex. C (Benoit -1162 Rpt.), ¶ 85; *see also id.*, ¶ 85 ████████

███████████████████████████, ¶ 86 ████████

██████████████████████████ Ex. D (Benoit -374

Rpt.), ¶¶ 85-86. And Dr. Bradford adamantly states that this importation is caused by Realtek's activities *abroad*: █████████████████

████████████████████████████████████████████

██████ Ex. B (Bradford Rpt.), ¶ 167.

Ultimately, there are no issues for the jury to decide because ParkerVision has already admitted that the identified foreign sales included in its damages calculations are caused by Realtek foreign (not domestic) conduct.

### b. The record is void of Realtek domestic activity.

The record confirms that there are no triable issues for a jury to decide. After extensive discovery—including email discovery, the production of over a hundred Realtek agreements, a dozen depositions of Realtek employees, numerous subpoenas to Realtek subsidiaries, distributors, and brand names including Vizio, Microsoft, and Amazon—ParkerVision has

---

[3] Mr. Benoit's methodology to estimate the number of Realtek products imported into the United States has been repeatedly rejected by the Federal Circuit. Realtek moves in according with *Daubert* separately to exclude this testimony.

identified no domestic activity by Realtek involving the Accused Chips aside from one unique agreement with Roku. Even if ParkerVision had not admitted that Realtek's foreign conduct is the proximate cause of the estimated imported foreign sales, ParkerVision points to no Realtek domestic activity to which those importations can be tied.

It is undisputed that ███████████████████████████  ████████████████████████████████ Ex. B (Bradford Rpt.), ¶ 140. Realtek itself is a foreign company with no office nor employees in the United States. Ex. J (May 13, 2025 Shang Da Lin Dep. Tr.), 21:14-22:5.[4] Realtek has almost no marketing material for the Accused Chips (relying on announcements on its website, datasheets, and product roadmaps) and a limited sales team for the Accused Chips. Ex. BB (Goode Rpt.), ¶ 62 (citing RLTK-PV-00004580 at RLTK-PV-00004581); Ex. J (May 13, 2025 Shang Da Lin Dep. Tr.), 15:19-16:6; Ex. S (Realtek Supplemental Responses to ParkerVision's First Set of Interrogatories dated May 23, 2025) at 29-30. Instead, as Dr. Bradford emphasizes, ███████████████ ████████████████████████████ (located outside the United States) and ████████████████████ Ex. B (Bradford Rpt.), ¶¶ 164-165. Put simply, Realtek's business model relies on sales to distributors, ODMs, and consumer brands outside the United States. See also Exs. K, Z, AA (Realtek annual reports identifying that less than 1% of Realtek's revenue originates from the U.S.).

Indeed, ParkerVision does not dispute that the evidence of record establishes that, other

---

[4] Realtek has two affiliated companies based in California that work on research and development. These subsidiaries did not perform work on the Accused Chips in this case. See Ex. S (Realtek Supplemental Responses to ParkerVision's First Set of Interrogatories dated May 23, 2025), at 2-4 (identifying all Realtek partners and contributors knowledgeable about, inter alia, the research, design, layout, and development of the accused chips). ParkerVision does not contest this fact. See Ex. B (Bradford Rpt.), ¶ 110; Ex. H (Bradford Dep. Tr.), 133:23-134:4 █████████████████████████████████ ████████████████████████████████████ ████████████████████ (objection omitted)).

than its activities with Roku, Realtek has no direct relationship with a U.S. company, nor has participated in any activities in the United States that resulted in foreign sales related to the Accused Chips. Dr. Bradford suggests that Realtek sells to U.S.-based companies ███ ███████ (either directly or indirectly). Ex. B (Bradford Rpt.), ¶¶ 114, 120, 137-139. But ParkerVision subpoenaed each of these companies resulting in no evidence of such sales. *See* Exs. L, M, N. Dr. Bradford further points to the fact that ████ and ██████ incorporate the Accused Chips in their respective products, and that each has a United States presence. Ex. B (Bradford Rpt.), ¶¶ 133-134. But despite the opportunity to subpoena these companies, there is no evidence of any Realtek domestic activity that resulted in sales to these companies. *Id.* And Dr. Bradford generally points to the fact that the Accused Chips are found in the products sold in the United States, like those of ████. Ex. B (Bradford Rpt.), ¶ 131. But this statement is detached from any domestic activity, let alone those attributable to Realtek. Finally, Dr. Bradford notes that Realtek has ███████████ the CES trade show in Las Vegas. Ex. B (Bradford Rpt.), ¶ 111. But as discussed in Section III.3, as a matter of law, Realtek's attendance alone does not constitute infringement. This is particularly true, here, where ParkerVision does not point to any evidence that Realtek's attendance at CES resulted in sales of the Accused Chips in the United States or otherwise.

Accordingly, summary judgment of no damages based on foreign sales is appropriate—even finding all evidence of record in ParkerVision's favor, the evidence is insufficient to show that Realtek domestic activity enabled or caused the foreign sales on which ParkerVision seeks to recover damages.

### 4.    ParkerVision's Lack of Evidence Mirrors That In *Brumfield*

The undisputed facts here are strikingly similar to those in *Brumfield*, where the Federal Circuit recently rejected plaintiff's attempt to include foreign conduct in the recovery of patent damages. There, the plaintiff demanded damages based on foreign sales because the defendant

"deliberately markets the [accused product] worldwide," and therefore, claimed that plaintiff is "entitled to worldwide patent damages for harm that is foreseeable." *Brumfield*, 97 F.4th at 865. The defendant countered that the plaintiff's damages expert's "worldwide damages opinion improperly includes foreign users with no link to any alleged US infringing activities." *Id.* The Federal Circuit agreed with the defendant.

In finding "no focused, coherent explanation of the required causal connection to domestic infringement," the Federal Circuit found that the plaintiff, like here, failed to identify any acts of domestic infringement that caused the captured foreign conduct. The Federal Circuit considered two groups of claims under § 271(a)—claims to a method and claims to a computer-readable medium (CRM) containing instructions to execute the method. *Brumfield*, 97 F.4th at 879. As to the method claims, the Federal Circuit reiterated that "[a] method claim is *directly* infringed only by one practicing the patented method." *Id.* (quoting *Joy Tech.*, 6 F.3d at 775). Noting that plaintiff's theory only relied on "making the accused product"— namely, making the software—the Federal Circuit emphasized that there "is no established recognition in patent law of direct infringement by 'making' a 'method.'" *Id.* As to the CRM claims, the Federal Circuit likewise noted that the claims do not cover "making" software "detached from any medium." *Id.* Thus, the Federal Circuit concluded that plaintiff's damages theory "is legally insufficient, even under the *WesternGeco* framework, for the simple reason that . . . it does not start from an act of 'infringement.'" *Id.*

Here, as in *Brumfield*, ParkerVision's damages theory is legally insufficient, even under the *WesternGeco* framework, for the simple reason that it does not start from an act of domestic infringement. First, as discussed in Sections IV.2 and IV.3, ParkerVision starts from foreign conduct that itself is not infringing. Second, as discussed in Section III, there is no infringement of the method claims, nor can ParkerVision identify such infringement.

Last, to the extent that ParkerVision identifies any domestic activity "tied" to foreign

conduct, it is not infringement at all, just like in *Brumfield*. Specifically, ParkerVision alleges that Realtek's foreign conduct causes *others* to infringe the Asserted Patents in the United States. But there can be no infringement by *others* because there is no indirect infringement in this case.

Indeed, the entire purpose of ParkerVision's industry expert is to opine that Realtek's activities abroad cause *others* to import and sell their products into the United States. *See* Ex. B (Bradford Rpt.), ¶¶ 161 ███████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████, 164 ██████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ The domestic activity identified by ParkerVision is not infringement by Realtek under § 271(a)—the only infringement alleged (and that can be alleged) in the instant action.

Importantly, there are no triable issues for a jury to decide. ParkerVision has made clear that that the evidence of record, if anything, shows that Realtek's foreign conduct caused domestic activity. ParkerVision cannot now claim at trial that this domestic activity caused the foreign conduct—ParkerVision and its experts have already alleged the exact reverse.

## V.    NO DAMAGES FOR THE ASSERTED SYSTEMS CLAIMS FOR FAILURE TO MARK

### 1.    ParkerVision Is Required To Take Reasonable Efforts To Mark By Sellers and Importers Of The Patented Article "Under The Patentee"

A patentee is not entitled to damages as to system claims, if the patentee failed to mark or failed to take reasonable efforts to ensure that those authorized by the patentee to make or sell within, or import into, the United States marked the patented article. Specifically, 35 U.S.C. § 287 provides:

> Patentees, and persons making, offering for sale, or selling within the United States **any patented article for or under them**, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent . . . In the event of failure so to mark, **no damages shall be recovered** by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.[5]

(emphasis added).  Critically, the language of the marking statute is not limited to licensed articles, but any patented articles sold "under the patentee."  Consequently, it is well-established that "section 287 applies to a nonmanufacturing patentee who has licensed *or authorized others* to produce or sell the patented article '*regardless of the particular form* [the] authorizations may take.'"  *Amsted Ind., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 n.2 (Fed. Cir. 1994) (quoting *In re Yarn Processing*, 602 F. Supp. 158, 169 (W.D.N.C. 1984) (emphasis added); *see also Yarn Processing*, 602 F. Supp. at 169 ("Section 287 applies to all 'persons' who make or sell 'for or under' the authority of the patentee and thus applies to authorizations by patentee of other persons to make and sell patented articles regardless of the particular form these authorizations may take and regardless of whether the authorizations are 'settlements agreements,' 'covenants not to sue' or 'licenses.'"); *VDPP, LLC v. Volkswagen Grp. of Am., Inc.*, 2024 WL 1313899, at *4; *Mass. Inst. Tech. v. Abacus Software, Inc.*, No. 5:01-cv-344, 2004 WL 5268123, at *9 (E.D. Tex. Aug. 4, 2004) (marking requirements apply "regardless of whether the authorizations are 'settlement agreements,' 'covenants not to sue' or 'licenses'").

When others "under the patentee" are involved, courts consider "whether the patentee made reasonable efforts to ensure compliance with the marking requirements." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).  The Federal

---

[5] It is undisputed that ParkerVision never provided Realtek with actual notice of alleged infringement. *See* Ex. S (Realtek Supplemental Responses to ParkerVision's First Set of Interrogatories dated May 23, 2025) at 4-6; Ex. Y (ParkerVision Supplemental Responses to Realtek's Second Set of Interrogatories dated May 23, 2025) at 2-3.

Circuit has found that failure to require authorized sellers and importers to mark in the parties' agreement supports a finding of no compliance with § 287. *Devices for Med. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987) (patentee "failed to carry its burden of convincing the jury that it had performed affirmative acts in compliance with § 287" where "licenses did not require its licensees to mark the [patented] product and there was no evidence that any product ever bore a patent marking"). Further, even where there is a contractual provision requiring marking, a patentee who fails to take any steps to determine if the authorized party is actually marking the products does not satisfy § 287's burden to mark. *K&K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*, 52 Fed. Appx. 135, 141 (Fed. Cir. 2002) ("Although there was a provision in the contract between K&K and Century requiring marking, K&K took no steps to determine if Century was actually marking the products until after the start of the current litigation.").

## 2. The Burden Has Shifted To ParkerVision To Show That It Took Reasonable Efforts To Ensure Compliance With Marking

Realtek has met its low burden of production by identifying unmarked patented articles—namely, identifying ███████ products incorporating ███████ chips sold in, and imported into, the United States under the settlement agreement between ParkerVision and ███████ dated July 2016. To determine compliance with § 287, Realtek "bears an initial burden of production to articulate the products it believes are unmarked 'patent articles' subject to § 287." *Arctic Cat*, 876 F.3d at 1368. The Federal Circuit has underscored that "this is a low bar," and "[t]he alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked product which the alleged infringer believes practice the patent." *Id.* Realtek has far exceeded this low bar, identifying the unmarked ███████ products multiple times in letters as well as interrogatory responses, and also identifying such products in its opening expert report.

23

In July 2016, ParkerVision and Samsung entered a settlement agreement ("ParkerVision-Samsung Agreement") resolving multiple litigations between the parties including *Certain RF Capable Integrated Circuits and Products Containing the Same*, Inv. No. 337-TA-982 which included Qualcomm Inc. ("Qualcomm") as a respondent, as well as *ParkerVision v. Apple Inc.*, Case No. 3:15-cv-01477-BJD-JRK (M.D. Fla.) and *ParkerVision v. Qualcomm Inc.*, Case No. 6:14-cv-00687-PGB-KRS both of which also included Qualcomm as a defendant. ██████████████████████████████████

██████████████████████████████████ *See* Ex. O (ParkerVision-Samsung Agreement) at Section 1.4 ("Licensed Patents" means (i) ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

("Excluded Components"):

██  ██████████████  ████████████
████████████████████████████████████
████████████  ██████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████

Ex. O (ParkerVision-Samsung Agreement) at Section 2.2. Thus, notwithstanding language stating otherwise in the provision, ████████████████████████████

████████████████████████████████████████

24

those that ParkerVision accused of infringing certain Asserted Patents in other litigation.

With the ParkerVision-Samsung Agreement in hand, Realtek identified Samsung products (including products incorporating its own chips and Qualcomm chips) as unmarked patented articles under *Arctic Cat*. *See* Exs. P (March 15, 2024 *Arctic Cat* Letter), Q (May 2, 2024 *Arctic Cat* Letter), R (May 22, 2025 *Arctic Cat* Letter); S (Realtek Supplemental Responses to ParkerVision's First Set of Interrogatories dated May 23, 2025) at 32-35. Notably, on May 22, 2025, Realtek sent ParkerVision a letter stating:



Ex. R (May 22, 2025 *Arctic Cat* Letter) at 1-2. Further, on May 23, 2025, Realtek identified the following in its interrogatory response:



Ex. S (Realtek Supplemental Responses to ParkerVision's First Set of Interrogatories dated May 23, 2025) at 34.

To provide ParkerVision the opportunity to establish that the unmarked Samsung products do not practice the Asserted Patents, Realtek reiterated its position in its opening expert report. Specifically, Realtek's technical expert noted that ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ Ex. T (Souri Rpt.), ¶ 1185.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

As such, Realtek has more than met its burden to identify the unmarked Samsung products. ParkerVision now "bears the burden to prove the products identified" complied with the marking statute—a burden ParkerVision cannot meet based on the undisputed facts.

### 3. ParkerVision Fatally Assumed That Products Governed By Covenants Not To Sue Are Exempt From Marking

ParkerVision cannot meet its burden to show that it made reasonable efforts to ensure that Samsung complied with the marking statute because it fatally assumed that it had no obligation to do so. Critically, ParkerVision expressly stated this incorrect assumption in its interrogatory response back in August 2024, boldly stating: ▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉ Ex. U (ParkerVision's Seventh Supplemental Response to Realtek's First Set of Interrogatories dated May 23, 2025) at 14. ParkerVision explained its faulty reasoning:

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉

Ex. U (ParkerVision's Seventh Supplemental Response to Realtek's First Set of Interrogatories dated May 23, 2025) at 15. Thus, ParkerVision expressly proceeded under the incorrect understanding that the marking statute does not apply to covenants not to sue.

This fatal misunderstanding of the law was confirmed at deposition by ParkerVision's corporate representative Jeffrey Parker (the founder of ParkerVision). ▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉



Ex. V (May 6, 2025 Parker Dep. Tr.) at 90:1-11, 92:8-14, 94:22-24.

Incorrectly assuming no marking was required, ParkerVision made no attempt to show that Qualcomm chips did not practice the Asserted Patents. Indeed, in its responsive technical expert report, ParkerVision's technical expert merely parroted:



Ex. W (Ricketts Rebuttal Rpt.), ¶ 106.

Consequently, ParkerVision has failed to show that the Samsung products incorporating Qualcomm chips do not practice the Asserted Patents or that ParkerVision made any effort to ensure Samsung's compliance with the marking statute. These failures are dispositive because ParkerVision's covenant to not sue Samsung based on products containing Qualcomm products were, in fact, subject to the marking requirement under the correct law.

4.     **It Is Undisputed There Was No Reasonable Efforts To Ensure Samsung Marked Because ParkerVision Assumed No Such Obligation Existed**

At bottom, there is nothing for the jury to decide because the facts on this issue are undisputed. Fatally, ParkerVision made the deliberate decision not to ensure that Samsung marked its products incorporating the Qualcomm chips because ParkerVision, once again, incredibly relied on an incorrect understanding of the law and assumed that no such marking obligations existed under a covenant not to sue.

As a result, ParkerVision cannot recover damages as a matter of law on the asserted system claims of the '817 and '528 Patents, which each expired before the suit was filed. The undisputed facts confirm this. ████████████████████████████

███████████████████████ Ex. O (ParkerVision-Samsung Agreement); Ex. V (May 6, 2025 Parker Dep. Tr.) at 87:8-14. ██████████████████████

██████ Ex. U (ParkerVision's Seventh Supplemental Response to Realtek's First Set of Interrogatories dated May 23, 2025) at 14. ████████████████████

████████████████████████████████ Ex. V (May 6, 2025 Parker Dep. Tr.) at 90:1-11, 92:8-14, 94:22-24. ████████████████████

██████████████████████████████████████ Ex. O (ParkerVision-Samsung Agreement) at Sections 1.3, 2.2. ███████████████

████████████████████████████████████████████

████████ Ex. W (Ricketts Rebuttal Rpt.), ¶¶ 93-112. ██████████████

████████████████████████████████████████████ Ex. V (May 6, 2025 Parker Dep. Tr.) at 90:1-11, 92:8-14, 94:22-24. ████████████

████████████████████████████████ Ex. V (May 6, 2025 Parker Dep. Tr.) at 92:15-98:5.

As such, the Court should grant summary judgment of no damages on the '817 and '528 Patents for failure to mark.

## VI.   CONCLUSION

For the foregoing reasons, Realtek respectfully requests the Court grant its motions for summary judgment.

DATED:  January 9, 2026

Respectfully submitted,

By:    /s/ Mark D. Siegmund
Mark D. Siegmund
State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND**
**JAMES PC**
7901 Fish Pond Rd., 2nd Floor
Waco, TX 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
msiegmund@cjsjlaw.com

Lisa K. Nguyen
**PAUL HASTINGS LLP**
1117 S. California Avenue
Palo Alto, CA 94304
Telephone: (650) 320-1800
Facsimile: (650) 320-1900
lisanguyen@paulhastings.com

Grace I. Wang
**PAUL HASTINGS LLP**
200 Park Avenue
New York, NY 10166
Telephone: (213) 683-6211
Facsimile: (213) 996-3211
gracewang@paulhastings.com

Jeffrey L. Johnson
**BAKER BOTTS LLP**
910 Louisiana St.
Houston, TX 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-7922
jeffrey.johnson@bakerbotts.com

*Counsel for Defendant*
*Realtek Semiconductor Corp.*

29

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2026, all counsel of record were served with the foregoing document via electronic service.


By: */s/ Mark D. Siegmund*
Mark D. Siegmund